UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| DOUGLAS ORAN BYRD and LeRHONDA LYNN BYRD,<br><br>Plaintiffs,<br><br>VS.<br><br>OCWEN LOAN SERVICING, LLC,<br><br>Defendant. | Civil Action No. 6:14cv4200-HMH<br><br>COMPLAINT<br>JURY TRIAL DEMANDED |

## COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Plaintiffs, Douglas Oran Byrd and LeRhonda Lynn Byrd (collectively "Plaintiffs"), by counsel, and for their Complaint against the defendant, Ocwen Loan Servicing, LLC, ("Defendant" or "Ocwen") state as follows:

### I. INTRODUCTION

1. Plaintiffs assert claims against Defendant for the willful, knowing, and/or negligent violation of: 1) Chapter 41 of Title 15 of the United States Code, the Consumer Credit Protection Credit Act, specifically, 15 U.S.C. § 1681 *et seq*. ("FCRA"); 2) the common law tort of invasion of privacy; and 3) Defendant's violations of the chapter 7 discharge injunction of the United States Bankruptcy Court of the District of South Carolina (Spartanburg), and seek to recover actual, statutory, and punitive damages, legal fees and expenses against Defendant.

### II. PARTIES

2. Plaintiffs are natural persons residing in Greenville County, South Carolina and they are "consumers" as

1

defined by the FCRA.

3. Defendant is a foreign limited liability company which may be served by delivering citation to its registered Agent, Corporation Service Company, 1703 Laurel Street, Columbia, SC 29201.

4. Defendant is a "person" and a "user" of consumer credit and other financial information, as said terms are defined and contemplated respectively, under the FCRA.

5. Defendant is a furnisher of consumer credit information to Trans Union, LLC ("TransUnion"), Equifax, Inc. ("Equifax"), Experian Information Solutions, LLC ("Experian"), and Innovis, Inc. ("Innovis") national consumer reporting agencies (collectively the "Credit Bureaus").

### III. JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 1334 and 1337(a) and 15 U.S.C. § 1681p and 28 U.S.C. §§2201-2202. .

7. Venue in this District is proper because Defendant transacts business in this District, Plaintiffs filed their bankruptcy in this district and the conduct complained of occurred in this District.

### IV. FACTUAL ALLEGATIONS

8. On December 21, 2012, Plaintiffs filed bankruptcy in case number 12-07837-hb ("Bankruptcy Case") in the District of South Carolina Bankruptcy Court ("Bankruptcy Court").

9. Prior to Plaintiffs filing their Bankruptcy Case, Defendant asserted a pre-petition claim against Plaintiffs in an attempt to collect a consumer debt allegedly owed by Plaintiffs. The debt required Plaintiffs to pay money arising out of transactions in which money, property, insurance, or services were the subject thereof and the same were primarily for personal, family, or household purposes. In Plaintiffs' bankruptcy petition, the claim was listed in Schedule "D" as a secured claim, such claim was secured by a lien on Plaintiffs' real property located at 4701 Highway 92, Gray Court, SC 29645 (the "Property") and was identified as Account No. xxx4863 (the "Loan" or "Account"). Plaintiffs listed the Property as "surrendered" on their Chapter 7 Individual Debtor's Statement of Intention filed with their bankruptcy petition and either previously vacated or vacated the Property immediately.

10. On December 21, 2012, Plaintiffs filed a mailing matrix with the Bankruptcy Court that provided

Defendant's correct address.

11. On or about December 27, 2012, the Bankruptcy Noticing Center for the Bankruptcy Court mailed out the "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors and Deadlines" ("341 Notice") to all creditors listed in the mailing matrix, previously filed in the Bankruptcy Case, including Defendant. The mailing of the 341 Notice constituted formal notice to Defendant of Plaintiff's Bankruptcy Case. The 341 Notice warned all creditors, including Defendant, in conspicuous language against violating the automatic stay pursuant to 11 U.S.C. §362. The United States Postal Service did not return the 341 Notice sent to Defendant. If the United States Postal Service did not return the notice, there is a presumption that Defendant received the notice mailed to it.

12. On April 17, 2013, the Bankruptcy Court issued an order granting Plaintiffs a discharge in their Bankruptcy Case ("Discharge Order") (the said order followed Official Form B18, including the explanatory language contained therein). The order discharged Plaintiffs from any liability for Defendant's pre-petition claim at issue. Included with the Discharge Order was an explanation of the general injunction prohibiting Defendant and others holding pre-petition claims from attempting to collect their claims against Plaintiffs.

13. The Discharge Order was mailed out to all creditors and other parties listed on the mailing matrix previously filed the Bankruptcy Court. This mailing constituted formal notice of Plaintiffs' discharge and the replacement of the automatic stay with the discharge injunction of 11 U.S.C. §524(a). The Discharge Order and its notice warned all creditors, including Defendant, in conspicuous language that collection of discharged debts was prohibited.

14. On April 17, 2013, the Bankruptcy Noticing Center sent a copy of the Discharge Order and notice including an explanation of the bankruptcy discharge in a chapter 7 case, including, but not limited to, the prohibition of collecting on discharged debt and contacting the discharged debtor, to Defendant by electronic transmission and on April 19, 2013 by first class mail. These mailings were not returned. If the United States Postal Service has not returned the mailing of the Discharge Order and notice, there is a presumption that Defendant received the Discharge Order and notice mailed to it by the Bankruptcy Noticing Center. A copy of the Discharge Order is attached herein as "Exhibit A" and is incorporated

herein by reference.

15. At no time has Defendant objected to or disputed the details of the claim in the schedules filed in Plaintiffs' Bankruptcy Case.

16. At no time during the pendency of the Bankruptcy Case did Plaintiffs reaffirm the subject debt.

17. At no time during the pendency of the Bankruptcy Case was Defendant's pre-petition claim at issue declared to be non-dischargeable.

18. On or about August 27, 2013, Plaintiffs' attorney W. Dennis Chamberlain sent Defendant, by facsimile transmission, a notice entitled "NOTICE OF VIOLATION-AUTOMATIC STAY, §362, FEDERAL BANKRUPTCY CODE," informing Defendant about Plaintiffs' Bankruptcy Case, the discharge date, referencing the Account, and informing Defendant that all contact with Plaintiffs is a violation of the Federal Bankruptcy Code and that an action for damages attorney fees and court costs will be filed if the harassment continues. .

19. A true and correct copy of the August 27, 2013 notice is attached hereto as Exhibit "B" and incorporated herein by reference.

20. Despite receiving communications from the Court and Plaintiffs' attorney, Mr. Chamberlain, regarding the Bankruptcy Case and discharge granted therein, Defendant, following the April 17, 2013 discharge of the debt at issue, engaged in debt collection activity against Plaintiffs on the subject discharged debt by: (1) sending Plaintiffs statements and letters on the Account, (2) impermissibly accessing and reviewing Plaintiffs' consumer reports and credit information maintained by Experian; (3) misrepresenting to Experian that it was accessing Plaintiffs' consumer reports and credit information to review or monitor its account(s) and (4) misreporting to Innovis credit bureau that Plaintiffs had an account with Defendant with a balance of $417,000 when Plaintiff never had an account with Defendant.

21. On or about July 31, 2014, Defendant reported to Innovis on the Account that Plaintiffs were indebted to Defendant in the Amount of $417,000, that the Account was included in Chapter 7 Bankruptcy, and that the reporting would remain on their credit report until 09/2019. Plaintiffs never had an account with Defendant, there was no creditor-debtor relationship between Plaintiffs and Defendant, and the debt on the

Account had been discharged for well over a year at the Defendant reported to Innovis. Accordingly, Ocwen had no right to report on the Account to the credit bureaus post-discharge.

22. A true and correct copy of relevant portions of Plaintiffs' Innovis consumer reports are attached hereto as Exhibits "C" and "D."

23. On or about July 9, 2014, Defendant sent Plaintiffs a notice advising them that foreclosure of the Property had been postponed for Loss Mitigation Evaluation and for Plaintiffs to contact Defendant at the phone number provided to set up an appointment, even after it had been instructed by Plaintiffs' attorney to cease and desist all contact with Plaintiffs.

24. A true and correct copy of this notice is attached hereto as Exhibit "E" and incorporated herein by reference.

25. On or about July 17, 2014, Defendant sent Plaintiffs a Mortgage Account Statement for the Account, together with a detachable payment coupon and return envelope, stating that the amount due on the Account was $562,103.88 and demanding immediate payment, stating the "Due Date" was "Due Now," even after it had been notified that the debt on the Account had been discharged.

26. A true and correct copy of this statement has been attached hereto as Exhibit "F" and is incorporated herein by reference.

27. On or about July 17, 2014, Defendant sent Plaintiffs a letter regarding the Home Affordable Modification Program ("HAMP"), asking Plaintiffs to contact Defendant at the phone number provided, and informing Plaintiffs that they may also write to Defendant at the address provided and to include information listed above in the letter.

28. A copy of this HAMP letter is attached hereto as Exhibit "G."

29. On or about August 9, 2014, Defendant sent Plaintiffs a letter informing them it bought hazard insurance for the Property and added the cost to Plaintiffs' mortgage loan account. The letter also informed Plaintiffs that the insurance it bought may be more expensive than insurance they can by themselves and may not provide as much coverage. Followed by a statement that if Plaintiffs buy hazard insurance to immediately provide Defendant with the insurance information, mail documents to Defendant, or update insurance

5

coverage information online, and to contact Defendant with questions at the provided phone number.

30. A true and correct copy of this August 9, 2014 letter is attached hereto as Exhibit "H."

31. On or about August 18, 2014, Defendant sent Plaintiffs Mortgage Account Statement for the Account, together with payment coupon and return envelope, stating that the amount due on the Account was $564,612.29 and demanding immediate payment, stating the "Due Date" was "Due Now," even after it had been notified that the debt on the Account had been discharged.

32. A true and correct copy of this statement has been attached hereto as Exhibit "I" and is incorporated herein by reference.

33. Further, despite the change in the legal status of the Account upon Plaintiffs filing their Bankruptcy Case and the discharge of the subject debt, Defendant, thereafter, illegally accessed and reviewed Plaintiffs' consumer reports and credit information with Experian.

34. On April 17, 2014, Defendant impermissibly accessed and reviewed Plaintiff LeRhonda Lynn Byrd's consumer report with Experian.

35. On April 18, 2014, Defendant impermissibly accessed and reviewed Plaintiff Douglas Oran Byrd's consumer report with Experian.

36. True and correct copies of relevant portions of Plaintiffs' Experian consumer reports showing Defendant's account reviews at issue are attached hereto as Exhibits "J&K."

37. The purpose for accessing Plaintiffs' consumer reports with Experian during the times at issue was allegedly to "complete a mortgage application" or "to insure or monitor its accounts;" yet, the debt on the Account had been discharged and there was no legitimate reason for Defendant to review Plaintiffs' consumer reports or credit information post-discharge of the subject debt. In fact, Plaintiffs' consumer reports and credit information were reviewed by Defendant for collection purposes and Defendant was trying to collect the subject debt in violation of the discharge injunction. If it denies that this was its purpose, then Defendant was trying to gain access to Plaintiffs' personal financial information which is protected by law.

38. Defendant's illegal access to Plaintiffs' Experian consumer reports and credit information has occurred as

recently as April 18, 2014, long after the discharge of the debt at issue.

39. The conduct of Defendant has proximately caused Plaintiffs past and future monetary loss, past and future mental distress and emotional anguish and other damages that will be presented to the jury.

40. Defendant knew and continues to know that a discharge order means the debt is no longer collectible, but Defendant has made a corporate decision to willfully and maliciously act contrary to its knowledge in its calculated decision to violate Plaintiffs' right to privacy by impermissibly accessing Plaintiffs' consumer reports after the discharge was granted in their Bankruptcy Case.

41. After a reasonable time for discovery, Plaintiffs believe they will be able to show that despite receiving dozens, if not hundreds, of disputes complaining that Defendant was illegally accessing consumer reports for account holders whose debts were being serviced by Defendant had been discharged in bankruptcy, Defendant intentionally and knowingly has not corrected its policy of doing so.

42. After a reasonable time for discovery, Plaintiffs believe they will be able to show that all actions at issue taken by employees, agents, servants, or representatives of any type for Defendant were taken in the line and scope of such individuals' (or entities') employment, agency, or representation.

43. After a reasonable time for discovery, Plaintiffs believe they will be able to show that all actions taken by Defendant at issue were performed maliciously, wantonly, recklessly, intentionally or willfully, and with either the desire to harm Plaintiffs and/or with the knowledge that its actions would very likely harm Plaintiffs and/or that its actions were taken in violation of the law.

44. After a reasonable time for discovery, Plaintiffs believe they will be able to show that Defendant has engaged in a pattern and practice of wrongful and unlawful behavior with respect to accounts and consumer reports and Defendant is subject to punitive damages, statutory damages, and all other appropriate measures to punish and deter similar future conduct by Defendant and similar companies.

## V. GROUNDS FOR RELIEF - COUNT I

## FAIR CREDIT REPORTING ACT (FCRA 15 U.S.C. §1681 *et. seq*)

45. Plaintiffs repeat, re-allege, and incorporate by reference all paragraphs above as if fully rewritten here.

46. The FCRA establishes very specific rules limiting when and why an entity can obtain a consumer report:

(f) Certain use or obtaining of information prohibited. – A person shall not use or obtain a consumer report for any purpose unless –

(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

(2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

*See* 15 U.S.C. § 1681b (f).

47. Section 15 U.S.C. § 1681b(a)(3) lists the all-inclusive purposes for which a consumer report can be obtained:

(a) In General. A] consumer reporting agency may furnish a consumer report under the following circumstances and no other:

(3) To a person which it has reason to believe;

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;

(F) otherwise has a legitimate business need for the information;

(ii) to review an account to determine whether the consumer continues to meet the terms of the account.

48. On at least two (2) occasions after the Discharge Order was signed and entered in Plaintiffs' Bankruptcy Case, Defendant requested and obtained Plaintiffs' consumer reports from Experian.

49. On such occasions, Defendant represented to Experian that such requests were made for "account review" purposes.

50. When requesting and obtaining Plaintiffs' credit information from Experian, as described herein, Defendant had actual knowledge that it did not have a permissible purpose to obtain such information.

51. Defendant has actual knowledge that as of Plaintiffs' bankruptcy filing in December 21, 2012 and its subsequent discharge, Defendant was legally prohibited from pursuing any collection against the debt on

the Account or communicating with Plaintiffs about the Account and the underlying discharged debt to justify an account review of their credit information. As such, Defendant had actual knowledge that it did not have a permissible purpose to access Plaintiffs' consumer reports with the credit bureaus post-discharge.

52. At the time Defendant accessed Plaintiffs' consumer reports at issue, Defendant had actual knowledge that Plaintiffs had not requested new credit from it, nor had they initiated a credit transaction with Defendant at any time since filing their Bankruptcy Case. Accordingly, Defendant had actual knowledge that it did not have a permissible purpose to access Plaintiffs' consumer reports and credit information as it did post-discharge.

53. At all times at issue, Defendant had actual knowledge that after the filing of Plaintiffs' Bankruptcy Case in April 2013, Plaintiffs did not authorize access and reviews of their consumer reports by Defendant. In August 2013, Plaintiffs' attorney even sent Defendant a cease and desist letter, demanding it cease all contact with Plaintiffs and complaining about Defendant's post-discharge contacts and harassment of Plaintiffs being violations of the U.S. Bankruptcy Code, which if continued, would result in litigation between the parties. Accordingly, Defendant had actual knowledge that it did not have a legally permissible purpose to access Plaintiffs' consumer reports and credit information when it engaged in such action during the times at issue.

54. For Defendant to request and obtain Plaintiffs' private personal and financial information from Experian, in the face of actual knowledge that it had no legally permissible purpose to do so, constitutes its knowing and willful violations of the FCRA.

55. After a reasonable time to conduct discovery, Plaintiffs believe they can prove Defendant requested and obtained Plaintiffs' private personal and financial information from Experian for the illegal purpose of attempting to collect on the subject discharged debt.

56. After a reasonable time to conduct discovery, Plaintiffs believe they can prove that Defendant used false pretenses, namely the representation that it intended to use Plaintiffs' consumer reports for an account review or collection purpose, in order to obtain Plaintiffs' private personal and financial information for the

illegal purpose of attempting to collect on the subject discharged debt.

57. After a reasonable time to conduct discovery, Plaintiffs believe they can prove, additionally and/or in the alternative, Defendant is unwilling or unable to prevent its systems(s) from requesting and obtaining Plaintiffs' consumer report from credit bureau(s) without a legally permissible purpose, thereby subjecting Plaintiffs to having their private, personal and financial information disclosed without their consent, authorization or other legal justification.

58. As a direct and proximate result of Defendant's conduct as outlined above, Plaintiffs have suffered, and will continue to suffer, substantial injury, including, but not limited to, mental anguish and emotional distress from the ongoing invasion of their privacy, entitling Plaintiffs to an award of actual damages in an amount to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

59. Defendant's actions at issue have caused Plaintiffs to suffer embarrassment, mental anguish, inconvenience, and other pecuniary and non-pecuniary damages.

60. Defendant's conduct reveals a conscious and reckless disregard of Plaintiffs' rights. Further, the injuries suffered by Plaintiffs were attended by circumstances of fraud, malice, and willful and wanton misconduct entitling Plaintiffs to punitive damages pursuant 15 U.S.C. § 1681n(a)(2).

61. Since Defendant's illegal post-discharge access and review of Plaintiffs' consumer reports and credit information is ongoing in nature, Defendant is liable for any and all future harm suffered by Plaintiffs as a result of its conduct at issue.

## VI. GROUNDS FOR RELIEF - COUNT II

### INVASION OF PRIVACY

62. Plaintiffs restate and reiterate herein all previous paragraphs.

63. Defendant's conduct, as described herein, when it acquired a copy of Plaintiffs' consumer reports, constituted an invasion of Plaintiffs' private affairs. The invasion was one that would be highly offensive to a reasonable person because confidential and sensitive personal and financial information is included a consumer report. Such wrongful acts caused injury to Plaintiffs which resulted in extreme emotional

anguish, embarrassment and loss of time.

64. Plaintiffs' injuries described herein resulted from Defendant's malice, which entitles Plaintiffs to an award of exemplary damages.

## VII. GROUNDS FOR RELIEF - COUNT III

## VIOLATION OF THE BANKRUPTCY DISCHARGE INJUNCTION

65. Plaintiffs repeat, re-allege, and incorporate herein all previous paragraphs above as if set forth herein in their entirety.

66. At all times material to this proceeding, Defendant had actual knowledge of Plaintiffs' Bankruptcy Case and the discharge of the debt at issue.

67. Defendant failed to cease its debt collection activity on the Account and debt at issue when it became aware Plaintiffs filed for bankruptcy protection and the debt had been discharged, as evidenced by Defendant, post-discharge, sending Plaintiffs Account statements and letters, misrepresenting to Experian the purpose for accessing Plaintiffs' consumer report and credit information, accessing Plaintiffs' consumer reports from Experian, and reporting to Innovis on the Account and that there was an outstanding balance.

68. Defendant's actions at issue were willful and constitute efforts to collect discharged debt from Plaintiffs in violation the discharge injunction of 11 U.S.C. §524(a). Defendant's failure to comply with the aforesaid laws, in light of receiving notices from the Bankruptcy Court and Plaintiffs' counsel regarding Plaintiffs' Bankruptcy Case, the discharge of the debt at issue, and the legal effect of the discharge and contacting Plaintiffs thereafter; illustrates its contempt for Federal law and the discharge injunction.

69. The post-discharge actions of Defendant in illegally accessing Plaintiffs' consumer reports from Experian, misrepresenting the status of the Account to Experian, reporting a balance was owed on the Account, and sending Plaintiffs statements and letters on the Account, as if the underlying debt was still legally collectible from Plaintiffs, constitutes a gross violation of the discharge injunction as set forth in 11 U.S.C. § 524(a)(1)-(3).

70. The facts and background stated above demonstrate that Defendant willfully violated the orders and injunctions of the Bankruptcy Court as they concern the chapter 7 bankruptcy filed by Plaintiffs. With this

prima facie showing, the duty is on Defendant to show, as the only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court that goes beyond a mere assertion of inability. Failing a showing of a present inability to comply with the orders and injunctions of the Bankruptcy Court by Defendant, Plaintiffs must prevail on their claims, and Defendant must be held liable for willfully violating the orders and injunctions of the Bankruptcy Court with regard to the bankruptcy filed by Plaintiffs. Any defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendant. Any allegation of a good faith exception should not be allowed.

71. Specifically, Defendant violated the part of the Bankruptcy Court's Discharge Order pertaining to 11 U.S.C. §524(a)(2) which "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived;…"

72. No exceptions exist under 11 U.S.C. §524 or the other provisions of the United States Bankruptcy Code or other applicable law that permit the conduct of Defendant at issue with regard to the discharge injunction, as stated above.

73. The orders and injunctions of the Bankruptcy Court cannot be waived, except by the virtue of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint. None of the aforementioned has been filed or approved by the Bankruptcy Court here, and no waiver of the orders or injunctions of the Bankruptcy Court has occurred in Plaintiffs' Bankruptcy Case, as pertaining to the rights and remedies of Defendant.

74. Also, there is no requirement of mitigation on the part of Plaintiffs that is relevant to violations of the orders and injunctions of the Bankruptcy Court. Any attempt to burden Plaintiffs with policing the misconduct of Defendant would be a complete derogation of the law. It is well settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for shouldering the cost of compliance. Any such defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited. Any defense put

forth by Defendant in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made to justify the conduct and action of Defendant. No allegation of a mitigation as a defense should be allowed.

75. Plaintiffs have been injured and damaged by Defendant's actions and are entitled to recover judgment against Defendant for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for violations of 11 U.S.C. §524, and pursuant to the Court's powers under 11 U.S.C. § 105.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs prays that the Court will:

    A.    Enter judgment in favor of Plaintiffs and against Defendant for statutory damages, actual damages, costs, and reasonable and necessary attorney's fees for violations of the FCRA, Invasion of Privacy, and the discharge injunction of the United States Bankruptcy Court for the District of South Carolina;

    B.    Find that appropriate circumstances exist for an award of punitive damages to Plaintiff;

    C.    Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

    D.    Grant such other and further relief, in law or equity, to which Plaintiffs might show themselves justly entitled.

Respectfully submitted,

DAVE MAXFIELD, ATTORNEY, LLC

By:    s/ Dave Maxfield
David A. Maxfield, Fed. ID 6293
5217 N. Trenholm Road, Suite B
Columbia, SC 29206
803-509-6800
855-299-1656 (fax)
dave@consumerlawsc.com

ATTORNEY FOR PLAINTIFFS